## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**Plaintiff**

                                        **Case No.: 8:05-CR-57-T-30-EAJ**

**v.**


**ANGELO WOODRUFF WYNN,**

**Defendant.**

_____/


### Report and Recommendation

Before the court are **Defendant Angelo Woodruff Wynn's Motion to Suppress Evidence** (Dkt. 16) and the **United States' Response to Defendant's Motion to Suppress Evidence**. (Dkt. 20)[1] An evidentiary hearing has been held.  (Dkt. 31)

Defendant was indicted for knowingly possessing a firearm affecting interstate commerce as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(d)(1).  Defendant contends that his warrantless arrest and the subsequent search of his vehicle violated the Fourth Amendment.  In addition, Defendant asserts that the police violated his Fifth Amendment rights by conducting a custodial interrogation without informing him of his Miranda

_____

[1] This matter was referred to the undersigned by the district court pursuant to 28 U.S.C. § 636(c) and Local Rule 6.01(b) M.D. Fla. for proceedings, consideration and a Report and Recommendation on Defendant's motion to suppress.  (Dkt. 19)

rights.  Having considered the evidence and arguments, I recommend that the motion to suppress be **DENIED**.

### <u>Findings of Fact</u>

On December 9, 2004, at approximately 11:00 a.m., Defendant was driving a 1994 white Buick on Club Drive, an access road near the University Mall in the vicinity of East Fowler Avenue in Tampa, Florida.

Hillsborough County Sheriff's Office Deputy Christopher Tuminella ("Deputy Tuminella") observed that the window tint on Defendant's car was below the AS/1 portion of the windshield in violation of state law.

With the flashing lights on, Hillsborough County Sheriff's Office Deputy Christopher Tuminella ("Deputy Tuminella") stopped Defendant's vehicle near East Fowler Avenue.  Deputy Tuminella approached the Buick which had pulled into a parking lot adjacent to a Sports Authority store.  Only after the stop did Deputy Tuminella ascertain the race and gender of the driver.

Deputy Tuminella advised Defendant that he was pulled over because the vehicle's window tinting was too low on the windshield.[2]  The citation issued later under Fla. Stat. § 316.2952

---

[2]  A review of Gov. Ex. 3 confirms the officer's observations. Deputy Tuminella testified that the AS/1 line is located at the top of the windshield.  Additionally, Deputy Tuminella stated that, prior to December 9, 2004, he had cited other drivers for violating Fla. Stat. § 316.2952.

indicated that the window tint was below the lawful line.[3]
Pursuant to Deputy Tuminella's request, Defendant provided his
driver's license and registration to the deputy.  Deputy Tuminella
returned to his patrol car with the documents to perform a records
check on Defendant and the vehicle.  He learned that Defendant had
several drug arrests.  According to Deputy Tuminella, he conferred
with Defendant for approximately 30 seconds and it took less than
three minutes to conduct the records check.

   Hillsborough County Sheriff's Office Deputy Mark Gilbertson
("Deputy Gilbertson") arrived on the scene after Defendant's
vehicle was pulled over by Deputy Tuminella.  Deputy Tuminella
conferred with Deputy Gilbertson concerning Defendant's prior drug
arrests.  Deputy Gilbertson knew that Deputy Tuminella intended to
ask for Defendant's consent to search the vehicle.

   Both officers approached Defendant's vehicle.   Deputy
Tuminella began a conversation with Defendant.   As Deputy
Gilbertson stood at the open passenger window, he noticed an order
which he recognized from his law enforcement experience as burnt

---

[3] The statute provides that a person may not operate a motor
vehicle with any sunscreening material unless the "sunscreening
material along a strip at the top of the windshield does not
encroach upon the driver's direct forward viewing area as more
particularly described and defined in Federal Motor Vehicle Safety
Standards No. 205 as the AS/1 portion of the windshield."  Fla.
Stat. § 316.2952(2)(b).  After the Defendant's arrest and interview
at the substation, Deputy Tuminella wrote a citation indicating
that Defendant violated Fla. Stat. § 316.2952(2)(b) for "window
tint below AS-1 line."   (Gov. Ex. 4)

marijuana coming from Defendant's vehicle.   Deputy Gilbertson
signaled to Deputy Tuminella, who was standing on the driver's side
of Defendant's vehicle, by pointing to his nose to indicate he
detected the smell of marijuana.

Deputy Tuminella asked if Defendant had anything of concern in
the vehicle such as drugs or guns.   Defendant answered no.   Deputy
Tuminella then asked Defendant for consent to search the vehicle
because of Defendant's criminal history of drug arrests.   Defendant
verbally indicated that the deputy could conduct a search.   Deputy
Gilbertson also testified that Defendant verbally consented to the
search of the vehicle.   There is no evidence that the Defendant did
not understand the officer's question or was coerced into
consenting.

Deputy Tuminella ordered Defendant out of the vehicle to
conduct a pat-down.   Based on his training and experience, Deputy
Tuminella detected the smell of marijuana on Defendant's clothing
during the pat down.   Deputy Gilbertson then moved Defendant to the
curb, which was several feet away from the vehicle.

Upon a search of the vehicle, Deputy Tuminella found several
baggies of marijuana on the floor board near the driver's seat in
plain view.[4]   After finding the marijuana, Deputy Tuminella
arrested Defendant.   Defendant was handcuffed and placed in the
back of the patrol car.

---

[4] The parties stipulate that the substance found in Defendant's
vehicle was marijuana and weighed approximately 10.6 grams.

While Defendant was in the patrol car, Deputy Tuminella continued the search of Defendant's vehicle.  Under the hood of the vehicle, Deputy Tuminella located a Taurus model .40 caliber pistol with a full magazine wrapped in a gray t-shirt next to the engine. After Defendant was placed in the patrol car, Deputy Gilbertson checked Defendant's windshield.  Based upon his prior experience and training, Deputy Gilbertson believed the window tinting was extremely dark and well below the AS/1 line.

Prior to transporting Defendant to police substation, Deputy Tuminella took photographs of Defendant and Defendant's vehicle. At the substation, Deputy Tuminella read a consent to be interviewed form to Defendant.  Defendant signed and initialed the form and had no questions.  During the interview, he admitted to the possession of the marijuana and the pistol.  Specifically, Defendant stated that he had smoked marijuana prior to being stopped and that he carried the gun for protection.

At the conclusion of the interview, Deputy Tuminella requested that Defendant write a statement about his arrest.  Defendant wrote, signed, and initialed a short statement regarding the stop of his vehicle, the search of the vehicle, and his subsequent arrest for possession of drugs and a firearm.[5]

_____

[5] During the hearing on the motion to suppress, Defendant called Joseph Guzman ("Guzman").  Guzman works in the automotive "after- market" window tinting industry and is certified by the State of Florida regarding window tinting.  Based upon his review of  the photographs of Defendant's vehicle, Guzman testified that he did not believe the window tinting violated the state statute as

## <u>Conclusions of Law</u>

Defendant argues that his warrantless arrest is invalid because the law enforcement stop of Defendant's vehicle was a pre-textual stop. Defendant also contends that the warrantless search of his vehicle was made without probable cause or voluntary consent. Finally, Defendant asserts that the police conducted a custodial interrogation without reading Defendant his Miranda warnings. Defendant seeks the suppression of the evidence found in the vehicle as well as the suppression of his statement to the police.

In response, the Government states that Defendant was stopped in his vehicle based on probable cause that a traffic violation occurred. After citing Defendant for a traffic violation, the Government contends the police had probable cause to search Defendant's vehicle based upon the odor of an illegal substance detected in the vehicle as well as Defendant's voluntary consent to search the vehicle. The Government further alleges that Defendant was read his Miranda rights after his arrest. According to the Government, Defendant waived his Miranda rights and voluntarily

---

the tint on Defendant's windshield extends approximately two feet down from the top of the windshield, and extends approximately eight to ten inches down from the AS/1 line. Because Defendant's height is six feet and one inch, Guzman concluded that the window tint did not affect his range of vision. According to Guzman's interpretation of the applicable statute, a vehicle could theoretically have sunscreening covering almost all of the windshield as long as the vision of the driver is not affected. Guzman's testimony is not persuasive for the reasons discussed hereafter.

made a statement to the police.

1.   Stop of Defendant's Vehicle

The court must first consider whether the police were justified in stopping Defendant for a non-moving traffic violation. Defendant argues that the traffic stop was a mere pretext for the investigation, without reasonable suspicion, of narcotics offenses.

Absent a warrant, the police may lawfully stop a moving vehicle when there is probable cause to conclude that a traffic infraction or other criminal violation involving the automobile or its occupants has occurred or is occurring.  Whren v. United States, 517 U.S. 806, 810 (1996).  The fact that the traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop.  Id. at 812-13; see also Arkansas v. Sullivan, 532 U.S. 769, 772 (2001)(a traffic violation arrest will not be rendered invalid by the fact that it was a pretext for a narcotics search).  Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. Devenpeck v. Alford, __ U.S. __, 125 S. Ct. 588, 593 (2004).

The issue in this case is whether Deputy Tuminella had an objective belief that the tinting on Defendant's windshield was in violation of the state statute.  After considering the evidence and legal arguments, the undersigned concludes that Deputy Tuminella's observations constituted probable cause to stop Defendant's vehicle for a non-moving traffic violation.  Deputy Tuminella testified

that he observed window tinting on the windshield of Defendant's vehicle. Based on his experience and training, Deputy Tuminella reasonably believed that the sunscreening material on Defendant's vehicle was below the AS/1 line in violation of state law. United States v. Wallace, 213 F.3d 1216, 1220 (9th Cir. 2000)(traffic stop of vehicle was valid because officer had objective belief that window tinting violated state law).

Moreover, the undersigned rejects the interpretation of Fla. Stat. § 316.2952 offered by Defendant. The statute provides in pertinent part that:

> (2) A person shall not operate any motor vehicle on any public highway, road, street with any sign, sunscreening material, product, or covering attached to, or located in or upon, the windshield, except the following: . . .
> (b) Sunscreening material along a strip at the top of the windshield, so long as such material is transparent and does not encouch upon the driver's direct forward viewing area as more particularly described and defined in Federal Motor Vehicle Safety Standards No. 205 as the AS/1 portion of the windshield.

Fla. Stat. § 316.2952(2)(b). Defendant's interpretation is not supported by the statute's language.[6]

---

[6] Under Guzman's reading of the law, window tinting for the same car could be illegal for one person, but legal for a taller or shorter individual. Such an illogical interpretation of the statute must be disregarded especially in light of the clear language permitting sunscreening material only at the top of the windshield described as the AS/1 portion. The court notes that the reference in Fla. Stat. § 316.2952(2)(b) to the "Federal Motor Vehicle Safety Standards" is of not help in defining the location of the AS/1 portion of the windshield. However, the testimony of the law enforcement officers as to the location of that area on

Therefore, because the circumstances support a finding that Deputy Tuminella had an objective reasonable belief that Defendant committed a traffic offense, there was probable cause to stop Defendant's vehicle.  The fact that the traffic violation arrest may have been a pretext for a narcotics search does not render the stop invalid.  As the Supreme Court stated in <u>Whren</u>, under the probable cause Fourth Amendment analysis, the court is concerned with the reasonableness of an officer's actions, not the subjective intentions of the officer.

   2.  <u>Continued Detention of Defendant and Search of the Vehicle</u>

Because the police validly detained Defendant for a traffic violation, they were entitled to conduct a variety of checks on the driver and vehicle, including running a criminal records check on Defendant and requesting consent to search the vehicle.  <u>See</u> <u>United States v. Hardy</u>, 855 F.2d 753, 755 (11th Cir. 1988)(officer may run computer check of driver's license and request consent to search during traffic stop).  Based on the testimony of the deputies, Deputy Tuminella spent approximately four minutes interacting with Defendant and performing a record's check of Defendant and the vehicle.  Thereafter, Deputy Tuminella had a brief conversation with Deputy Gilbertson regarding Defendant's prior drug arrests and Deputy Tuminella's intent to seek Defendant's consent to search the vehicle.  The Eleventh Circuit has upheld traffic stops lasting

_____

Defendant's vehicle is sufficient for probable cause purposes.

9

much longer than this case.  <u>United States v. Purcell</u>, 236 F.3d 1274, 1279(11th Cir. 2001)(14-minute traffic stop is reasonable); <u>Hardy</u>, 855 F.2d at 761 (50-minute traffic stop is reasonable).[7] Thus, in light of the facts surrounding the traffic stop, the police did not detain Defendant for an unreasonable period of time.

If the initial stop was legal, an officer have a duty to investigate suspicious circumstances that come to their attention. <u>Hardy</u>, 855 F.2d at 757.  It is well settled that the detection of the odor of marijuana furnishes probable cause to search a vehicle. <u>United States v. Griffin</u>, 109 F.3d 706, 708 (11th Cir. 1997)(warrantless search of a vehicle was valid because of the odor of marijuana in the vehicle); <u>United States v. Rivera</u>, 595 F.2d 1095, 1098 (5th Cir. 1979)(strong odor of marijuana furnished probable cause to search vehicle)[8]; <u>cf. United States v. Lueck</u>, 678 F.2d 895, 903 (11th Cir. 1982)(strong smell of marijuana by officers gave rise to probable cause to support warrantless search of packages in trunk of vehicle).

In the case at hand, the law enforcement officer legitimately stopped Defendant's vehicle for a traffic infraction.  After the

---

[7] The time spent by Deputy Tuminella securing Defendant's consent to search the vehicle is not considered part of the traffic stop because such questioning is not a seizure.  <u>Hardy</u>, 855 F.2d at 761 n. 13 (the eight to ten minutes during which officer attempted to secure consent to search vehicle was not so coercive as to render the discussion between officer and defendant a seizure).

[8] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit rendered before October 1, 1981.

traffic stop, the deputies possessed sufficient facts to believe that an offense was being committed.   First, Deputy Tuminella conducted a records check which showed Defendant's prior drug arrests.   Second, Deputy Gilbertson detected the smell of burnt marijuana coming from Defendant's vehicle.   Third, Deputy Tuminella also noticed the odor of burnt marijuana on Defendant's clothing when he was patting down Defendant.   These factors, in combination, provided Deputy Tuminella with probable cause to search Defendant's vehicle.[9]   Seizure of the evidence found including the bags of marijuana and the firearm was lawful.

In view of the finding that the police had probable cause to search Defendant's vehicle, it is unnecessary to determine the validity of Defendant's purported consent to search the vehicle.   See United States v. Zabalza, 346 F.3d 1255, 1259 (10th Cir. 2003); United States v. Fifty Seven Thousand Four Hundred & Forty-Three Dollars, 42 F. Supp. 2d 1293, 1298 (S.D. Fla. 1999).[10]

---

[9]   An officer may conduct a warrantless search of every part of a legitimately stopped vehicle, including the trunk and containers, if there is probable cause to believe that the vehicle contains contraband.   California v. Acevedo, 500 U.S. 565, 570 (1991)(citing United States v. Ross, 456 U.S. 798, 825 (1982).   After detecting the odor of marijuana from Defendant's vehicle, and subsequently discovering marijuana on the floor board near the driver's seat, the police had probable cause to search the entire vehicle for contraband.

[10]   Were the resolution of this issue necessary, the court would find that Defendant voluntarily and affirmatively consented to the search.   In order for a consent to be deemed voluntary, it must be the product of an essentially free and unconstrained choice.   United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).   A review of the relevant factors in determining

3.   <u>Defendant's Statements to the Police</u>

Defendant argues that the moment his driver's license and registration were taken away from him, he was in custody. According to Defendant, the police were required to inform Defendant of his Miranda rights prior to interrogating him.  In addition, Defendant states that he was never advised of his Miranda rights.  Defendant's arguments have no merit.

Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."   <u>Thompson v. Keohane</u>, 516 U.S. 99, 107 (1995)(<u>citing</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)).  The Supreme Court rejects the contention that the initial stop of a defendant's vehicle, by itself, renders the defendant "in custody." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 441-42 (1984).  As the Supreme Court explained in <u>Berkemer</u>, a driver during a typical traffic stop is not free to leave.  <u>Berkemer</u>, 468 U.S. at 436-37.  Nonetheless, the driver does not need to be warned of his constitutional rights under Miranda because traffic stops are presumptively brief and the driver does not feel completely at the mercy of the police.  <u>Id.</u> at 437-39.  Thus, persons detained pursuant to ordinary traffic stops are not "in custody" for purposes of Miranda rights.  <u>Id.</u> at 440.

---

voluntariness establishes that Defendant voluntarily consented to the search of his vehicle.  <u>See</u> <u>United States v. Francis</u>, No. 04-13268, 2005 U.S. App. LEXIS 14294 at * 7-8 (11th Cir. July 14, 2005).

Here, Defendant was stopped for a traffic violation during mid-morning in a public parking lot. Although Deputy Tuminella possessed his driver's license and registration, Defendant was not handcuffed or ordered to the ground. Similarly, Deputy Tuminella did not draw his weapon on Defendant or use any physical force on Defendant. Rather, the totality of the circumstances were such that a reasonable person in Defendant's position would not have believed he was at the mercy of the police. The brief traffic stop did not involve a highly intrusive coercive atmosphere. Therefore, the police were not required to read Defendant his Miranda protections prior to Defendant being taken into custody.

After the police searched Defendant's vehicle and found marijuana, Defendant was arrested, handcuffed and taken into custody. Prior to any questioning of Defendant at the substation, Deputy Tuminella testified that he read a consent to be interviewed form to Defendant. Defendant signed and initialed the form and had no questions. During the interview, Defendant admitted to the possession of the marijuana and the pistol. Moreover, at the conclusion of the interview, Defendant composed, signed, and initialed a short statement regarding the stop of his vehicle, the search of the vehicle, and his subsequent arrest for possession of drugs and a firearm. Once Defendant was taken into custody, he was properly advised of his Miranda rights and knowingly, intelligently and voluntarily waived those rights and agreed to answer questions.

## Conclusion

The court finds that the warrantless arrest and subsequent search of Defendant's vehicle did not violate the Fourth Amendment. Accordingly, the evidence seized as a result of the arrest and search should not be suppressed. The court **RECOMMENDS** that **Defendant Angelo Woodruff Wynn's Motion to Suppress Evidence** (Dkt. 16) be **DENIED.**[11]


Date: July 19, 2005

ELIZABETH A JENKINS
United States Magistrate Judge

Case Number: **Case No.: 8:05-CR-57-30-T-EAJ**


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C.§ 636(b)(1).

---

[11] Any party objecting to the factual findings shall file a transcript of the evidentiary hearing.

14